No. 21-2393

# In the United States Court of Appeals for the Seventh Circuit

————

WILLIE BALLE,
PLAINTIFF-APPELLANT

*v.*

DAVID KENNEDY ET AL.,
DEFENDANTS-APPELLEES

————

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF ILLINOIS,*
*CASE NO. 1:19-CV-01213-JBM, HON. JOE BILLY MCDADE*

————

**REPLY BRIEF OF PLAINTIFF-APPELLANT WILLIE BALLE**

————

STEFFEN N. JOHNSON
  *Wilson Sonsini*
  *Goodrich & Rosati, P.C.*
  *1700 K Street, NW*
  *Washington, DC 20006*
  *(202) 973-8800*
  *sjohnson@wsgr.com*

CONOR D. TUCKER*
AVA K. MEHTA
  *Wilson Sonsini*
  *Goodrich & Rosati, P.C.*
  *633 West Fifth Street*
  *Los Angeles, CA 90071*
  *(424) 446-6900*
  *ctucker@wsgr.com*
  *amehta@wsgr.com*

*\*Appointed Counsel for Plaintiff-Appellant, Willie Balle*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iii

INTRODUCTION .......................................................................... 1

ARGUMENT ................................................................................ 2

I.   The record evidence creates a material dispute as to Defendants' deliberate indifference. ................................................ 2

    A.   Under *Farmer*, obvious dangers create material disputes of fact regarding Defendants' denial. ....................... 3

    B.   The record sufficiently discloses Hobart's and Kennedy's deliberate indifference. ........................................... 7

II.   The district court's merits review order should be reversed. ........ 10

    A.   Susie Hobart did not take "reasonable measures" by effectively ignoring substantial risk of serious harm to Balle. .................................................................. 10

    B.   On remand, Balle should be given an opportunity to amend his complaint. ........................................... 15

III.   On remand, counsel should be appointed for Balle. ...................... 15

IV.   Defendants' alternative bases for affirmance are unconvincing. ................................................................. 20

    A.   Defendants at least forfeited the alternative bases for affirmance they pursue on appeal. ...................................... 20

    B.   On the merits, Defendants' alternative bases for affirmance should be rejected. ........................................... 25

        1.   The kitchen conditions presented an objectively serious risk of harm to Balle. ........................................ 25

2.      A jury should decide whether ignoring dangerous conditions constitutes "reasonable measures" ............ 28

3.      Summary judgment on Defendants' qualified immunity defense would be inappropriate.................. 31

CONCLUSION ........................................................................ 35

<u>ATTACHMENTS</u>

Certificate of Compliance with FRAP Rule 32(a)(7), FRAP Rule 32(g) and CR 32(c)

Proof of Service

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amcast Indus. Corp.* v. *Detrex Corp.*,
    2 F.3d 746 (7th Cir. 1993) ............................................................ 22

*Anderson* v. *Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................... 4

*Anderson* v. *Morrison*,
    835 F.3d 681 (7th Cir. 2016) ...................................................... 26

*Backes* v. *Village of Peoria Heights, Ill.*,
    662 F.3d 866 (7th Cir. 2011) ........................................................ 8

*Bagola* v. *Kindt*,
    131 F.3d 632 (7th Cir. 1997) ................................... 10-11, 13, 28, 30

*Balsewicz* v. *Pawlyk*,
    963 F.3d 650 (7th Cir. 2020) ...................................................... 24

*Cain* v. *Continental Tire the Ams., LLC*,
    2022 WL 1055564 (7th Cir. Apr. 8, 2022) ................................ 16-17

*Celotex Corp.* v. *Catrett*,
    477 U.S. 317 (1986) ...................................................................... 6

*Daniel* v. *Cook County*,
    833 F.3d 728 (7th Cir. 2016) ........................................................ 7

*District of Columbia* v. *Wesby*,
    138 S. Ct. 577 (2018) ............................................................. 31-32

*Estate of Clark* v. *Walker*,
    865 F.3d 544 (7th Cir. 2017) ................................................... 32-33

*Farmer* v. *Brenan*,
  511 U.S. 825 (1994) ...................................................... 1-6, 9-13, 27

*Hale* v. *Tallapoosa County*,
  50 F.3d 1579 (11th Cir. 1995) ........................................ 12-14, 29-31

*Haywood* v. *Hathaway*,
  842 F.3d 1026 (7th Cir. 2016) (per curium) .............. 7, 11-15, 29-30

*Henry* v. *Hulett*,
  969 F.3d 769 (7th Cir. 2020) (en banc) ........................ 21, 24, 25, 31

*Hernandez* v. *Cook Cty. Sheriff's Office*,
  634 F.3d 906 (7th Cir. 2011) ........................................................ 21

*Hively* v. *Ivy Tech Cmt. Coll. of Ind.*,
  853 F.3d 339 (7th Cir. 2017) ........................................................ 22

*Jackson* v. *Duckworth*,
  955 F.2d 21 (7th Cir. 1992) .......................................................... 26

*James* v. *Eli*,
  889 F.3d 320 (7th Cir. 2018) ................................................... 17-20

*Jones* v. *Bock*,
  549 U.S. 199 (2007) ...................................................................... 10

*Jones* v. *City of Chicago*,
  856 F.2d 985 (7th Cir. 1988) .......................................................... 7

*McDonald* v. *Adamson*,
  840 F.3d 343 (7th Cir. 2016) ........................................................ 25

*McGill* v. *Duckworth*,
  944 F.2d 344 (7th Cir. 1991) ........................................................ 11

*Miller* v. *Harbaugh*,
  698 F.3d 956 (7th Cir. 2012) ........................................................ 29

*Owens* v. *Duncan*,
  798 F. App'x 9 (7th Cir. 2020) ...................................................... 16

*Petties* v. *Carter*,
  836 F.3d 722 (7th Cir. 2016) ............................................................ 4

*Pickett* v. *Chi. Transit Auth.*,
  930 F.3d 869 (7th Cir. 2019) ................................................... 16, 18

*Rhodes* v. *Michigan*,
  10 F.4th 665 (6th Cir. 2021) ........................................................... 33

*Smith* v. *Dart*,
  803 F.3d 304 (7th Cir. 2015) ................................................... 10, 15

*Smith* v. *Finkley*,
  10 F.4th 725 (7th Cir. 2021) .................................................... 31, 34

*Smith* v. *Peters*,
  631 F.3d 418 (7th Cir. 2011) ...................................................11-12

*Strand* v. *Minchuk*,
  910 F.3d 909 (7th Cir. 2018) .....................................................33-34

*Thomas* v. *Wardell*,
  951 F.3d 854 (7th Cir. 2020) ................................................... 16, 18

*Watkins* v. *Lancor*,
  558 F. App'x 662 (7th Cir. 2014) ........................................... 26, 33

*Williams* v. *Shah*,
  927 F.3d 476 (7th Cir. 2019) ........................................................ 22

*Zimmerman* v. *Bornick*,
  25 F.4th 491 (7th Cir. 2022) ......................................................... 15

## Constitutional Provisions

U.S. Const. amend. VIII ..................................................11-12, 31-33

## Statutes

820 ILCS 219/25 ............................................................................. 28

**Rules and Regulations**

29 C.F.R. § 1910.22 ................................................................27-28

Fed. R. Civ. P. 37 .......................................................................23

Fed. R. Civ. P. 56 .........................................................................6

Fed. R. Evid. 801 ..........................................................................6

## INTRODUCTION

This is not a slip-and-fall case.  As a condition of his employment, Balle was required to carry boiling water across pockmarked, oil-strewn floors—an obviously dangerous task.  He protested his assignment on the day of his injury, but was forced to complete it anyway.  The uncontroverted consequence: third-degree burns and lasting nerve damage.

Defendants' response rests on three critical errors.  *First*, they misunderstand the logic of *Farmer*.  In their view, Balle's claim fails because he presented no evidence "contradicting" Defendants' disavowal of subjective knowledge.  BDA 30, 34.[1]  But under *Farmer*, an officer's "knowledge of a substantial risk is a question of fact" which can be proven by "inference from circumstantial evidence" including "the very fact that the risk was obvious." *Farmer* v. *Brenan*, 511 U.S. 825, 841 (1994).  In short, obviousness of the danger can create a material dispute with a defendant's disavowal.  That precludes summary judgment.  Were the rule otherwise, any defendant could win summary judgment simply by denying subjective knowledge of an obvious, serious risk.

---

[1] "AOB" refers to Appellant's Opening Brief (No. 31) and "BDA" refers to the Brief of Defendants-Appellees (No. 42).

*Second*, Defendants echo a central mistake of the district court: that they cannot be liable if they could not fix the sink or floor.  That is wrong.  Under *Farmer* and this Court's cases, Defendants still have a duty to take reasonable measures within their power to abate the risks, including by putting an end to the relevant task.  They cannot do nothing.  Correcting that error requires both reversal as to Susie Hobart and denial of Defendants' summary judgment motion.

*Third*, Defendants failed to raise below the alternative bases for affirmance they urge on appeal, leaving Balle without an opportunity to respond or develop the record on those points.  On this appeal, then, their arguments related to objective seriousness, reasonable measures, and qualified immunity are forfeited.  But even if the Court reached them, Defendants' arguments require reading the record in their favor—which is plainly impermissible on summary judgment.

The Court should reverse.

## ARGUMENT

## I.   The record evidence creates a material dispute as to Defendants' deliberate indifference.

Defendants' central argument on appeal is that Balle lacks evidence to rebut their denials that they had subjective knowledge of the

severity of the kitchen conditions or the specific dangers faced by Balle on January 2, 2019.  BDA 28-30; 31-34.  This both repeats the district court's error (AOB 37-38) and misunderstands *Farmer*.  Under *Farmer*, evidence that the dangers were obvious can *itself* create a material factual dispute over whether Defendants had subjective knowledge of the risks.  Defendants are free to claim ignorance, but whether to credit such a denial of knowledge is for the jury—not the court.

A. **Under *Farmer*, obvious dangers create material disputes of fact regarding Defendants' denial.**

*Farmer* allows plaintiffs at summary judgment to contest a defendant's denial of subjective knowledge of dangerous conditions with evidence that those conditions were open and obvious.  Indeed, the defendants in *Farmer* argued—just as Defendants do here—that they "had no knowledge of any potential danger" to the inmate.  *Farmer*, 511 U.S. at 832 (citation and quotation omitted).  Yet the Court reversed and remanded, directing the lower courts to consider whether additional evidence—including whether the risk of assault was obvious—precluded summary judgment.  *Id.* at 848-849; see also *id.* at 842-843.

The common sense of *Farmer* is that the obviousness of the danger turns a defendant's denial of knowledge into a question of credibility.

This Court recognized that logic in *Petties*: "When a doctor says he did not realize his treatment decisions (or lack thereof) could cause serious harm to a plaintiff, a jury is entitled to weigh that explanation against certain clues that the doctor *did* know." *Petties* v. *Carter*, 836 F.3d 722, 731 (7th Cir. 2016) (en banc). Such "[c]redibility determinations * * * are jury functions" and courts cannot assume the role of deciding them on summary judgment. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Balle is therefore entitled to "establish [Defendants'] awareness by reliance on any relevant evidence" (*Farmer*, 511 U.S. 848), "including inference from circumstantial evidence" that the "prison official knew of a substantial risk from the very fact that the risk was obvious" (*id.* at 842; see also *Petties*, 836 F.3d at 732). And while "it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety," the Court in *Farmer* made clear that such inferences should be resolved by the "trier of fact." 511 U.S. at 844. Here, because record evidence establishes that the dangers were open and obvious, the credibility of Defendants' denial cannot be decided on summary judgment.

Defendants misunderstand *Farmer*, and instead attempt to saddle Balle with a heightened burden on summary judgment.  According to them, Balle's claim fails because he "presented no evidence contradicting the evidence that Kennedy was unaware of a risk of harm" (BDA 30) and "did not provide testimony contradicting Hobart's attestation that he was unaware of the risks posed by the kitchen's conditions" (BDA 34).  That misses the point.  Under *Farmer*, evidence that the danger was obvious creates a material dispute with these denials.  And the record here, read in the light most favorable to Balle, plainly contains sufficient evidence that the relevant dangers were obvious: the kitchen conditions were an "accident waiting to happen" (B67 (Balle Dep. 23:24-24:16)), well-known among the inmates (B66 (Balle Dep. 20:25-21:17)), well-documented by the prison (see B41 (Kennedy Decl.)), known to the defendants (B35 (Kennedy Decl.); B54 (Hobart Decl.)), longstanding (see B53 (Hobart Decl.); B67 (Balle Dep. 23:17-23)), repeatedly recurring (B66 (Balle Dep. 21:9-17)), and readily observable even by those not working in the kitchen (B65 (Balle Dep. 16:1-3)).  See also AOB 14-17, 27-30.

The record shows that, amidst these obviously dangerous conditions, Defendants had a longstanding "practice" of requiring inmates to

carry buckets of boiling water across the pockmarked kitchen floor in order to wash dishes whenever the hot water was out.  B53 (Hobart Decl.). That evidence raises an inference of Defendants' knowledge.  And while the jury need not ultimately accept that inference (see *Farmer*, 511 U.S. at 844), the court below was not free to reject it.  Defendants' subjective knowledge—and their credibility—is an issue for the jury.

Additionally, Defendants' suggestion that some of Balle's evidence is improper at summary judgment is misguided.  A party need only produce evidence that *could* be admissible at trial. Fed. R. Civ. Proc. 56(c); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 324 (1986).  Regarding Balle's testimony of other inmate's statements, Balle—a pro se litigant—identified the inmates' testimony as evidence he intended to supply at trial.  B66-67 (Balle Dep. 21-18-22:12).  Rule 56 "does not require the nonmoving party to depose h[is] own witnesses." *Celotex*, 477 U.S. at 324.  And because Susie Hobart was improperly dismissed, her statements are better construed as a party opponent's.  Fed. R. Evid. 801(d)(2).  In any event, none of the supposed hearsay evidence is essential to denial of summary judgment—it is either not required to prove Balle's case or is repetitive of other, indisputably admissible, evidence.

6

**B.    The record sufficiently discloses Hobart's and Kennedy's deliberate indifference.**

Turning to Defendants' specific arguments, the district court correctly held that Hobart's knowledge and position made him "potentially liable for the conduct of the kitchen supervisors who directed it." A14 (SJ Order 6).  To begin with, Hobart is wrong to suggest that his involvement needed to be "personal."  BDA 30.  While under Section 1983 "supervisors are not vicariously liable for their subordinates' misdeeds" (*Haywood* v. *Hathaway*, 842 F.3d 1026, 1030 (7th Cir. 2016) (per curium)), such a statement is "correct but incomplete" (cf. *Daniel* v. *Cook County*, 833 F.3d 728, 737 (7th Cir. 2016)).  A supervisor with subjective knowledge of a substantial risk to inmate safety cannot avoid liability by ignoring it.  See *Haywood*, 842 F.3d at 1030, cf. also *Daniel*, 833 F.3d at 737-738.  Once a supervisor-defendant knows of an obvious risk—as the warden did in *Haywood*—he could still be liable for failing to take adequate measures within his means to reduce that risk.  See 842 F.3d at 1030.  And as this Court explained in *Jones* v. *City of Chicago*, supervisors can be liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."  856 F.2d 985, 992-993 (7th Cir. 1988).

Here, Hobart plainly knew about the danger. He admits knowledge both of the "condition of the kitchen floor" and the "practice" of requiring inmates to cross it carrying boiling water. B53-54. Moreover, there is sufficient evidence to infer his approval and enablement of the practice: the practice was longstanding, he acknowledged that his subordinate officers "instruct[ed] the inmates in how to wash the dishes in this manner" (B54 (Hobart Decl.)), and his job responsibilities included "[m]onitor[ing] the training of new offenders" to join the kitchen and "assign[ing] them to specific jobs" (B56 (Hobart's job description)). Given this evidence, Hobart's insistence that he did not "personally instruct the inmates" means nothing. And by managing, training, and assigning the inmates in the kitchen as well as the supervisors instructing those inmates, this case is distinguishable from the authority upon which Hobart relies—*Backes* v. *Village of Peoria Heights, Ill.*, 662 F.3d 866 (7th Cir. 2011). There, unlike here, the "supervisor"—a village police chief—was nowhere in the chain of command and "belonged to a completely different government entity" from the one whose officers allegedly attacked plaintiff. *Id.* at 870.

Hobart's other arguments are equally unconvincing. As previously discussed, whether Hobart was truly "unaware of the particularly risky

8

aspects of the challenged conditions" (BDA 31) is a question for the jury because those risks were obvious. And *Farmer* forecloses Hobart's argument that he lacked subjective knowledge that *Balle* was particularly likely to be injured on January 2, 2019: given an obvious risk, "it would obviously be irrelevant to liability that the officials could not guess beforehand who would" be harmed. *Farmer*, 511 U.S. at 843-844. Plus, Defendants' "reasonable measures" arguments are at least forfeited and, in any event, unpersuasive. See *infra* at 24, 28-31.

The same is true of Kennedy's arguments. Read in the light most favorable to Balle, the record shows that the dangerous working conditions in the kitchen were longstanding and obvious to those working and living in the MSU. Kennedy had been working in the prison for the better part of a decade. B34 (Kennedy Decl.). Moreover, his own testimony belies a lack of knowledge: that inmates would otherwise face dangerous working conditions is one explanation for why David Kennedy viewed "no hot water in the inmate kitchen" as a "serious" issue to be "taken care of quickly." B35 (Kennedy Decl.). The district court could not properly accord deference to Kennedy's denial in the face of the circumstantial evidence put forward by Balle. And personal involvement by senior prison

officials may be inferred where, as here, the violation is "potentially systemic."  Cf. *Smith* v. *Dart*, 803 F.3d 304, 309 & n.2 (7th Cir. 2015).

## II.  The district court's merits review order should be reversed.

The district court's core misunderstanding of *Farmer* also led to the erroneous dismissal of Susie Hobart.  But the "reasonable measures" urged as reason to affirm cannot justify that decision.  The Court should reverse and remand, giving Balle the opportunity to amend his complaint against Warden Kennedy and Mr. Harbarger.

### A.  Susie Hobart did not take "reasonable measures" by effectively ignoring substantial risk of serious harm to Balle.

Balle cannot be required to plead around Susie Hobart's defense that she took "reasonable" steps to address the known risk of harm.  See AOB 43-45 (discussing *Jones* v. *Bock*, 549 U.S. 199 (2007)).  That argument alone, which stands unrebutted, is sufficient to justify reversal.  But if the Court addresses whether Susie Hobart took "reasonable measures" to abate the known risks, the record confirms that she did not.

Under *Farmer*, a defendant who knows that an inmate faces a risk of serious harm may not "disregard[] that risk by failing to take reasonable measures to abate it."  511 U.S. at 847.  An officer complies if she "took measures that [she] believed were reasonable and effective in

10

abating the risks identified"—even if ultimately unsuccessful. *Bagola* v. *Kindt*, 131 F.3d 632, 647 (7th Cir. 1997); see *Farmer*, 511 U.S. at 844.

The district court's central premise—echoed in Defendants' brief—is that if Susie Hobart could not "fix the sink" she could not be liable for "the effects of circumstances beyond [her] control." BDA 39 (citing and quoting A04 (Merits Order 4) and *McGill* v. *Duckworth*, 944 F.2d 344, 348-349 (7th Cir. 1991)). But that gets this issue wrong.

This Court's cases demonstrate that "reasonable measures" look to actions *within* Defendant's power—not those *beyond* it. For instance, *Smith* v. *Peters* addressed allegations of "handling heavy tools with glove-less hands in subzero weather." 631 F.3d 418, 420 (7th Cir. 2011). The allegations sufficiently stated an Eighth Amendment claim—notwith-standing defendant's inability to control the weather—because defend-ants failed to provide safety instructions or protective equipment to alle-viate the risks. *Ibid.* Similarly, *Haywood* addressed the consequences of a power outage during a storm where the "temperature fell below freez-ing," the inmate's window was broken, and "guards refused to * * * pro-vide adequate clothing and blankets." 842 F.3d at 1030. Those facts de-feated summary judgment: "[i]f [the] circumstances were as Haywood

11

asserts, then the prison violated his constitutional rights." *Ibid.* Again, it did not matter that the prison officials could not control the weather. This Court recognized that they *can* control whether they subject prisoners to dangerous conditions without appropriate safety instruction or equipment (*Peters*, 631 F.3d at 419-421) or without attempting to actually abate the dangers (*Haywood*, 842 F.3d at 1030). Under the Eighth Amendment, officers must at least try to "abate" obvious risks. See *Farmer*, 511 U.S. at 847. They cannot do nothing.

In *Hale* v. *Tallapoosa County*, for example, the warden argued that he could not be deliberately indifferent to violence due to overcrowding in his prison "because he worked toward construction of a new jail which, he contends, was the only way to reduce the risk of violence." 50 F.3d 1579, 1584 (11th Cir. 1995). But while the jury could consider the warden's construction efforts, "such efforts would not necessarily absolve him": the jury could still find he was "deliberately indifferent by disregarding 'alternative means' or interim measures for reducing the risk[s]" (*id.* at 1584), and the plaintiff had offered several alternative reasonable measures to reduce the risk of violence (*id.* at 1583). *Hale* thus confirms that Defendants cannot avoid liability by saying that a complete solution

is beyond their grasp while "disregard[ing] solutions within [their] means." *Ibid.* (citation and quotation omitted).

Rather, an officer must take measures within her means to "abat[e] the risks identified." *Bagola*, 131 F.3d at 647; see also *Farmer*, 511 U.S. at 847. For instance, when the warden learned of factory safety violations in *Bagola*, he "installed gates and cages around the [dangerous] machines, as well as an emergency shutoff cable." 131 F.3d at 635. In addition, "factory officials" there "took worker safety seriously": they "conducted monthly safety inspections;" required "periodic safety talks;" and instructed the plaintiff to ensure the machines were turned off before inspecting them (which he failed to do) and not to go inside the gates otherwise. *Ibid*. These actions were "reasonable and effective in abating the risks identified." *Id*. at 647.

But when efforts are not targeted to abate known risks, they are not reasonable. In *Haywood*, the warden performed a single temperature check (on "one of the warmest days of the winter") and ensured the "generators were operating properly." 842 F.3d at 1031. Yet no evidence showed any temperature check during the power outage, and in any event properly operating generators were useless if "the windows in the

unit would not close." *Ibid.* In short, because the warden's efforts could not abate the risks faced by inmates, they were "plainly inappropriate responses * * * to the extreme cold." *Ibid.* (citation and quotation omitted).

For similar reasons, Susie Hobart's actions were not reasonable. Her efforts—disclaiming awareness "of his dishwasher assignment," promising to "correct[]" the "mistake," and submitting work orders (BDA 39)—did nothing to abate the risks of injury actually faced by Balle. On merits review, that is enough to avoid dismissal. But even on summary judgment, Susie would have lost. The record discloses other reasonable measures she could have taken. There was another kitchen to which she could have directed dirty dishes while the hot water was out. B71 (Balle Dep. 39:12-15); B75 (Balle Decl.). The record even reflects that prison officials shifted work between kitchens when necessary, as the other kitchen sometimes took over food preparation. See B75 (Balle Decl.). And if not that, because the hot water would have been fixed "quickly" (B50 (Kennedy Decl.)), she could have told the inmates to wait until that happened. Yet Susie Hobart disregarded solutions that were "within h[er] means." *Hale*, 50 F.3d at 1584 (quotation omitted). And because

her actions did nothing to abate the risks, they were "plainly inappropri-ate." *Haywood*, 842 F.3d at 1031 (quotation omitted).

Effectively doing nothing in the face of obvious risk is not reasona-ble. Susie Hobart observed the dangerous working conditions on the day of Balle's injury, did nothing to abate them, and required him to work amidst them anyway. This Court should reverse.

## B. On remand, Balle should be given an opportunity to amend his complaint.

Defendants' arguments regarding the remaining dismissed defend-ants do not undermine Balle's central point: leave to amend should be liberally granted. *Zimmerman* v. *Bornick*, 25 F.4th 491, 492 (7th Cir. 2022). That is especially true where, as here, "potentially systemic" vio-lations permit an inference of involvement by supervisory prison officials. *Smith*, 803 F.3d at 309 & n.2 (citation and quotation omitted). Given the longstanding practice of endangering inmates, Balle should be given an opportunity, on remand, to amend his allegations against Warden Ken-nedy and Mr. Harbarger.

## III. On remand, counsel should be appointed for Balle.

Defendants fail to undermine Balle's showing that the district court's reasons for refusing to appoint counsel reflect an abuse of

discretion.  AOB 47-54.  Balle contacted four attorneys and a fifth firm and provided, for the court's review, the relevant contact information in his declaration.  B13-14.  His declaration also established his lack of financial means, lack of training, and limited knowledge of the law.  *Ibid.* The district court's first denial was cursory—finding that he lacked a good faith effort to recruit his own attorney without any analysis of competency and complexity.  Failure to conduct that "required" analysis warrants reversal.  *Thomas* v. *Wardell*, 951 F.3d 854, 860-861 (7th Cir. 2020).

Defendants' cases do not suggest otherwise.  Citing *Owens* v. *Duncan*, 798 F. App'x 9 (7th Cir. 2020), Defendants suggest that Balle provided insufficient information for the district court to "evaluate" his attempt to find a lawyer.  BDA 45.  But the "information" that the plaintiff *failed* to provide there is the very information that Balle *did* provide here: a "list [of] their names or addresses."  798 F. App'x at 13; see B13-14. *Pickett*, in contrast, addresses the *district court*'s failure to provide reasoning for its decision on the record and nowhere suggests that litigants must explain "why the lawyers had declined representation."  BDA 45; see *Pickett* v. *Chi. Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019).  And the plaintiff in *Cain* both failed to substantiate his financial claims and

never provided corroborative documentation. *Cain* v. *Continental Tire the Ams., LLC*, 2022 WL 1055564, *2 (7th Cir. Apr. 8, 2022). Defendants do not seriously dispute that Balle could not afford a lawyer on his prison-work income. And Balle backed up his efforts with documentary evidence. B13-14; B20; B31-33.

The later refusals fare no better. As a case progresses, "complexity increases and competence decreases." *James* v. *Eli*, 889 F.3d 320, 327, 329 (7th Cir. 2018). By Balle's third request, on the eve of summary judgment, the complexity of this case had grown exponentially. Discovery deadlines loomed and were misunderstood—and Defendants even moved to strike Balle's discovery requests. See ECF No. 32. Production obligations were similarly misunderstood. See B67 (Balle Dep. 22:25-23:2). COVID-19 restrictions cut Balle off from his sole legal assistant. B23-24. And, in part because of the district court's error in dismissing Susie Hobart, the complex legal issues now included the nuances of supervisor liability under Section 1983 and the exceptions to hearsay. Further, Balle had (twice) complied with the district court's initial requirement that subsequent requests "provide copies of the letters sent to, and

received from, prospective counsel."  Compare A05 (Merit Order 5), with B20-21 and B31-33.  Yet twice more the district court denied his request.

District courts "abuse their discretion where they fail to consider the complexities of advanced-stage litigation activities and whether a litigant is capable of handling them."  *James*, 889 F.3d at 327 (citation and quotation omitted).  That occurred here.  The court's later text orders provide only cursory reasons—none of which adequately weigh the case's complexity and Balle's competency.  Denying the motion effectively without explanation was error (see *Pickett*, 930 F.3d at 870) and impermissibly "arbitrary" (see *Wardell*, 951 F.3d at 861).

But unlike *Pickett*, the denial was not harmless.  See *Pickett*, 930 F.3d at 872.  Defendants' responsive brief shows why.  As one example, Balle did not realize he should submit the inmate affidavits on summary judgment or introduce their testimony prior to trial.  See B66-67 (Balle Dep. 21:18-25, 22:22-23:2).  Thus, the affidavits are not in the record.  Yet Defendants argue that the lack of that evidence is dispositive: that there was no corroborating evidence of floor conditions or other injuries (BDA 23, 25, 33), that Balle lacked corroborating evidence of the obviousness of the dangers (BDA 32, 35), and that Balle had "no competent evidence"

18

that the dangers were longstanding (BDA 29). The affidavits would provide evidence of the kitchen conditions, length of hot-water outages, and injuries to other inmates—the very things Defendants say are missing. Thus, Defendants' own arguments show that Balle's failure to introduce the affidavits—something no competent attorney would have failed to do—would have made a difference.

Balle has more than satisfied the necessary showing of a "*reasonable likelihood* that the presence of counsel would have made a difference." *James*, 889 F.3d at 329 (citation and quotation omitted). As in *James*, prejudice is shown by Balle's inability "to respond to defendants' summary judgment motions with admissible evidence." *Id.* at 331. Defendants cannot, out of one side of their mouths, argue Balle failed to meet his evidentiary burdens while, out of the other, argue that the failure to submit relevant evidence was not prejudicial.

Further similarities to the facts of *James* confirm that the district court abused its discretion here: Balle's "attempts to conduct discovery were equally hopeless;" he could not articulate his policy and practice position (which the district court misconstrued as a *Monell* claim); he failed to depose named defendants ("who could have been forced to testify about

their subjective knowledge"); and he misunderstood how to use and sub-mit as evidence formal discovery procedures. See *id.* at 331 (citation and quotation omitted). This Court should reverse with instructions to ap-point counsel.

## IV. Defendants' alternative bases for affirmance are unconvinc-ing.

Defendants failed to raise below any of the alternative bases for af-firmance that they now pursue here. On this appeal, those arguments are at least forfeited. But even if the Court reaches them, Defendants impermissibly ask the Court to read the record in their favor. These ar-guments do not support affirmance.

### A. Defendants at least forfeited the alternative bases for affirmance they pursue on appeal.

Defendants' brief urges affirmance on three alternative theories: that the kitchen conditions were not an "objectively serious deprivation" because they did not present a substantial risk of serious harm to Balle; that Defendants took "reasonable measures" to abate the risks; and that Defendants are entitled to qualified immunity. Defendants, however, never briefed or litigated these issues below and the record remains un-der-developed.

This Court "generally do[es] not consider issues raised for the first time on appeal." *Henry* v. *Hulett*, 969 F.3d 769, 785 (7th Cir. 2020) (en banc). "The underlying concern is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument." *Ibid.* quoting *Hernandez* v. *Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011). Here, Defendants' arguments for affirmance—including as regards their affirmative defenses—were not sufficiently pursued below and therefore should be considered "waived, or at least forfeited" on this appeal. *Id.* at 785. Further, none of the arguments meet the standard for relief from forfeiture, which in civil cases requires (1) exceptional circumstances (2) where substantial rights are affected and (3) a resulting miscarriage of justice. *Id.* at 786.

First, Defendants admit that they "did not address whether these conditions posed an objectively serious risk in their district court briefing." BDA 23. They argue instead that this Court can address "pure issue[s] of law" for the first time on appeal because it "will cause Balle no harm." *Ibid.* (citation and quotation omitted). But the question is not a pure issue of law and addressing it *would* prejudice Balle.

Defendants' cases do not suggest otherwise.  See BDA 23 (citing
*Hively* v. *Ivy Tech Cmt. Coll. of Ind.*, 853 F.3d 339, 351 (7th Cir. 2017),
*Amcast Indus. Corp.* v. *Detrex Corp.*, 2 F.3d 746, 749-750 (7th Cir. 1993),
and *Williams* v. *Shah*, 927 F.3d 476, 480 (7th Cir. 2019)).  *Hively* ad-
dressed "what the correct rule of law is now in light of the Supreme
Court's" decisions.  853 F.3d at 350.  But no party has asked this Court
to reconsider "what the correct rule of law is now."  This dispute is about
sufficiency of facts.  In *Williams*, the undisputed and well-developed rec-
ord established a key fact "without contradiction."  927 F.3d at 480-481.
Not so here.  Certainly, Defendants read the facts to suggest that kitchen
conditions were not so serious, or that the water was not so hot, or that
the floor had only "one" hole.  See, e.g., BDA 22.  But on summary judg-
ment, disputed facts and inferences are drawn in Balle's favor, not theirs.
At most, the severity of the kitchen conditions is disputed.  See AOB 27
& n.4; *infra* at 25-28.  These cases are inapposite.

Amcast recognizes that relief from forfeiture occurs only in the "rare
case" where forfeiture "has caused no one—not the district judge, not us,
not the appellee—any harm."  2 F.3d at 749.  Here, Defendants' failure
to raise has harmed Balle.  Defendants blocked discovery on the very

kitchen conditions they now say Balle failed to prove. Balle requested both a diagram of the kitchen and an opportunity to take photographs of the "MSU Kitchen floors, sink, cooking kettles." Defendants refused. Their reason? A "diagram depicting the areas of travel between the cooking kettles and dish sinks exists," but it "will not be produced"—and "inmates cannot have photographs of the inside of a correctional facility due to safety and security concerns."[2]

Defendants unilaterally denied Balle evidence regarding the severity of the conditions and now argue that its absence—e.g., that Balle provided "no evidence" of the "floor's condition" or "that Balle had to cross the hole near the kettles" (BDA 23)—supports affirmance. Because Defendants did not raise the issue below, Balle never had a chance to point out Defendants' obstruction of discovery, seek an appropriate sanction under Rule 37, or include the responses in the record. Both Balle and this Court are thus harmed by Defendants' failure to raise the issue because the record does not (and could not) reflect Balle's response.

---

[2] Upon request, appointed counsel can provide Defendants' Responses to Plaintiff's Second Requests for Production, dated March 31, 2021, and signed by Megan E. Murphy, Assistant Attorney General of the State of Illinois containing these quoted responses.

Second, Hobart does not justify relieving his forfeiture of the "reasonable measures" argument at all.   Instead, he sneaks "reasonable measures" arguments into his deliberate indifference discussion.   See BDA 20, 32, 39.  Yet this Court often views "reasonable measures" as a separate analysis from deliberate indifference.  Cf. *Balsewicz* v. *Pawlyk*, 963 F.3d 650, 655 (7th Cir. 2020) ("Finally, an official is not liable if he takes reasonable measures to abate the known risk").   And Defendants did not move for summary judgment on the reasonableness of their responses—they moved solely on their subjective knowledge.   ECF No. 33. Balle had no notice that he needed to introduce evidence contradicting an argument that Defendants took "reasonable measures"—or even what measures Defendants contended were "reasonable."   As it is not a purely legal question—nor are the underlying facts undisputed—the issue is at least forfeited.   See *Henry*, 969 F.3d at 786-787.

Finally, as to qualified immunity, Defendants argue that the "court may nevertheless affirm the entry of summary judgment" because they raised a qualified immunity defense in their answer.   BDA 35.   But this Court, sitting en banc, has rejected that very argument.   *Henry*, 969 F.3d at 785.   There, as here, if Defendants "failed to raise their qualified

24

immunity defense in their summary judgment motion * * * they have waived it"—even if "they asserted it in their answer." *Ibid.* That holding resolves the entire qualified immunity issue before this Court, which should "not affirm a judgment based on an affirmative defense raised for the first time on appeal." *Id.* at 785-786 (quoting *McDonald* v. *Adamson*, 840 F.3d 343, 347 (7th Cir. 2016)).

This Court need go no further on Defendants' alternative arguments for affirmance. They are forfeited on this appeal.

## B. On the merits, Defendants' alternative bases for affirmance should be rejected.

Affirming on Defendants' proffered alternative bases would require the Court to read the record in a light most favorable to the Defendants. Such an approach lacks any support in precedent.

### 1. The kitchen conditions presented an objectively serious risk of harm to Balle.

Even setting aside Defendants' forfeiture, the kitchen conditions presented an objectively serious risk of harm. By Defendants' own admission, the floor was persistently "cracked and missing tiles." B54 (Hobart Decl.). Because the floor "move[d] up and down" (B44 (Kennedy Decl.)) the danger was always present, but never in exactly the same way—exacerbating the safety issues. Balle's testimony establishes that

the floor had "deep divots and cracks all over" and "was constantly wet from water spills and slick with oil."  B74 (Balle Decl.).  When the hot water was out, inmates were required to use plastic buckets—some without handles and others "with a thin plastic strap" (B74 (Balle Decl.))—to transport boiling water across those pockmarked floors to clean dishes.  The prison officials kept the water so it "stayed hot.  And hot, hot, hot."  B66 (Balle Dep. 19:20-20:24).  To state the obvious: this was not just "a wet kitchen floor."  Contra *Watkins* v. *Lancor*, 558 F. App'x 662, 665 (7th Cir. 2014).  Requiring inmates to work amidst such an "obstacle course" is sufficient to preclude summary judgment.  See *Anderson* v. *Morrison*, 835 F.3d 681, 683 (7th Cir. 2016).

Defendants contest the "sever[ity]" of these kitchen conditions.  BDA 23.  For instance, they suggest that there was only "one four-to-five-inch-deep hole," and that Balle may not have needed to cross it to conduct his work.  See BDA 22-23.  "[B]ut summary judgment is not a procedure for resolving a swearing contest" regarding the severity of the "conditions" faced by an inmate.  *Jackson* v. *Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).  The record contains evidence that the conditions were severe.

26

Defendants cannot defeat summary judgment by interpreting facts in a light most favorable to *themselves*.

Further, Defendants cite no case requiring other injuries as a means of corroborating the objective danger. BDA 22-23. Nor is that surprising, as Supreme Court precedent expressly "does not require a prisoner seeking a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief." *Farmer*, 511 U.S. at 845 (citation and quotation omitted, alterations in original). Regardless, Balle intends to call other inmates with knowledge of prior injuries at trial. B66-67 (Balle Dep. 21:18-22:12).

Next—citing cases involving Occupational Safety and Health Administration ("OSHA") violations—Defendants say "conditions that * * * violate safety standards may be objectively serious" but that "[t]here was no [such] evidence" here. BDA 21, 23. Again, however, none of Defendants' cases *require* evidence of safety violations. And in any event, the record contains prima facie violations of federal safety standards. Take the floor with "deep divots and cracks all over," including large holes, which was constantly "slick with oil." B74 (Balle Decl.). These conditions violate OSHA regulations requiring that "[w]alking-working surfaces are

27

maintained free of hazards such as * * * protruding objects, loose boards * * * [or] spills." 29 C.F.R. § 1910.22(a)(3).

Nor did Defendants properly address those hazards. Such conditions must be "corrected or repaired before an employee uses the walking-working surface again," or—if they cannot be repaired—"the hazard must be guarded to prevent employees from using the walking-working surface until the hazard is corrected or repaired." 29 C.F.R. § 1910.22(d)(2). Hazards existed, were not fixed before inmates were required to work there, and were not guarded. The record thus sufficiently demonstrates violations of safety standards. Contra BDA 23. That federal regulations may not apply does not matter. The workplace in *Bagola* was "not required by law to comply with [OSHA]," yet those violations were still probative. *Bagola*, 131 F.3d at 635. And Illinois OSHA appears to have adopted 29 C.F.R. § 1910 in its entirety. See 820 ILCS 219/25 subdiv. a.

The conditions faced by Balle were objectively serious.

### 2. A jury should decide whether ignoring dangerous conditions constitutes "reasonable measures."

Defendants believe that because the "entire kitchen would need to be renovated to fix the floor" (BDA 27), they cannot be liable for situations

over which they have no "control" or "power" (*id.* 27 quoting B50 (Kennedy Decl.); *id.* 32 quoting B54 (Hobart Decl.)).  But this is a distraction.

The kitchen's necessary repairs do not absolve Defendants of the obligation to take reasonable measures within their means to address the dangers that Balle faced.  See *supra* at 11-15.  Defendants repeatedly cite *Miller* to argue that Defendants "could not be held liable for any injuries caused by it [the kitchen conditions] because the 'remedial step was not within [their] power.'"  BDA 27 (quoting *Miller* v. *Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012)); see also *id.* at 32, 38.  But *Miller* itself recognizes the tension between that statement and Supreme Court precedent "intimat[ing]" otherwise.  698 F.3d at 962.  *Miller* sidesteps that tension, assumes the availability of alternative measures, and decides the case on other grounds.  *Id.* at 962, 964.  That does not help Defendants.  And regardless, Defendants could still be liable if their actions were "plainly inappropriate" attempts to abate a known risk (*Haywood*, 842 F.3d at 1031 (citation and quotation omitted)) or "disregard[ed] * * * interim measures for reducing the risk[s]" (*Hale*, 50 F.3d at 1584).

Further, the record contradicts Defendants' assertion that they took sufficient reasonable measures.  To begin with, Kennedy has never

argued that his actions were reasonable—whether on appeal or below. That argument is forfeited as to him. Hobart, meanwhile, says "he would 'always' ensure that maintenance 'fixed [the water heater] as quickly as possible.'" BDA 32 (quoting B53 (Hobart Decl.)). But reporting the problem did not abate the obvious risks of using plastic buckets to carry boiling water across pockmarked floors slick with oil. It cannot "absolve him" (*Hale*, 50 F.3d at 1584) because the response did not address those risks, and was therefore "plainly inappropriate" (*Haywood*, 842 F.3d at 1031 (citation and quotation omitted)).

Defendants rely on *Bagola*, but in contrast to the record there, the record here does not show that the MSU "took worker safety seriously." Quite the contrary. The record contains no evidence of protective equipment, guarding inmates against the kitchen's dangers, regular safety inspections, periodic safety talks, or safety instructions. Even under *Bagola*, Hobart's actions were not "effective in abating the risks identified"—and do not absolve him of liability. 131 F.3d at 647. Instead, as explained *supra* at 14-15, the record reflects other steps that Hobart could have taken to abate the risks. Defendants never explain why dishwashing should take priority over inmate safety.

While Defendants may argue that their actions were reasonable, a jury could also find that Defendants were "deliberately indifferent by disregarding 'alternative means' or interim measures for reducing the risk[]." See *Hale*, 50 F.3d at 1584 (citation and quotation omitted). That precludes summary judgment: a jury must decide the question.

### 3. Summary judgment on Defendants' qualified immunity defense would be inappropriate.

*Henry* entirely resolves Defendants' qualified immunity argument: it is waived—or at least forfeited. *Henry*, 969 F.3d at 785. But Defendants would have lost at summary judgment anyway. Qualified immunity does not apply where defendants (1) violated a constitutional right that was (2) "clearly established" at the time of defendants' actions. *District of Columbia* v. *Wesby*, 138 S. Ct. 577, 588-589 (2018). As to the first prong, there are—at the very least—material disputes of fact as to whether the severity the conditions in Balle's workplace violated his Eighth Amendment rights. Where factual "disputes cannot be separated from whether a constitutional right was violated," that is enough to carry the first prong on summary judgment. *Smith* v. *Finkley*, 10 F.4th 725, 742 (7th Cir. 2021).

31

Secondly, Balle's Eighth Amendment rights were "clearly established" by 2019, when he suffered his injuries. Either "controlling authority" or "a robust consensus of cases of persuasive authority" can clearly establish a right. *Wesby*, 138 S. Ct. at 589-590 (citations and quotations omitted). While sufficient "specificity" is required so officers have "notice of their duties" (*Estate of Clark* v. *Walker*, 865 F.3d 544, 551 (7th Cir. 2017)), there "does not have to be a case directly on point" (*Wesby*, 138 S. Ct. at 590 (citation and quotation omitted)). Thus, "[f]or [the] purposes of qualified immunity," Eighth Amendment violations "need not be litigated and then established disease by disease or injury by injury." *Estate of Clark*, 865 F.3d at 553. The same should be true for unsafe working conditions: they need not be established workplace by workplace or prison by prison.

By 2019, it was clearly established that an inmate had a right to a prison working conditions that guarded against known risks of serious physical harm. Defendants' own cases demonstrate as much. In 2014, this Court held that kitchen "working conditions present[ing] a substantial risk of serious physical injury" where defendants "did nothing to protect [the inmate]" *could* violate the Eighth Amendment—although the

"wet kitchen floor" in that case, alone, was insufficient. *Watkins*, 558 F. App'x at 665. And by the end of 2015, "on-point precedent from the Second, Seventh, Eighth, Ninth, and Tenth Circuits, clearly established" that "prison official[s] [were] on notice that their recklessly disregarding a known risk to a prison worker's safety * * * would violate" the Eighth Amendment. *Rhodes* v. *Michigan*, 10 F.4th 665, 683 (6th Cir. 2021). It is of course immaterial that no case specifically addresses an inmate carrying boiling water across a broken, pockmarked, and oil-strewn kitchen floor. *Estate of Clark*, 865 F.3d at 552-553; see also *Rhodes*, 10 F.4th at 683. Defendants' qualified immunity defense would thus fail at summary judgment.

Again, Defendants cannot avoid this result by contesting the seriousness of the danger presented by the floors, existence of prior injuries, or heat of the water. See, e.g., BDA 13-15, 22, 23, 25, 31. Under this Court's cases, these disputes require denial of summary judgment regarding qualified immunity. In *Strand* v. *Minchuk*, this Court held "that a subdued suspect has the [clearly established] right not to be seized by deadly or significant force," but that "substantial factual dispute about the circumstances and timing surrounding [defendant's] decision to shoot

[the plaintiff] precludes" summary judgment of qualified immunity. 910 F.3d 909, 918 (7th Cir. 2018). Similarly in *Finkley*, this Court held that "shooting an unarmed and surrendering suspect * * * would violate clearly established law." 10 F.4th at 742-743. Although the officers insisted that immediate threat of serious harm justified their actions, the "record viewed in the light most favorable to [plaintiff] shows factual disputes" on that question. *Ibid.* Where factual "questions are unresolved and material to the 'clearly established law' prong," summary judgment is inappropriate. *Id.* at 743.

Defendants cannot resolve these factual disputes "on the force of say so." *Strand*, 910 F.3d at 917. Defendants' qualified immunity defense should not be a basis for affirmance.[3]

---

[3] Balle acknowledges that his transfer from Pontiac MSU and away from Defendants' supervision deprives him of standing to pursue injunctive relief against Defendants in their official capacities. Lacking standing, on remand those claims should be dismissed without prejudice to Balle's ability to litigate them if he regains standing (e.g., transferred back to Pontiac MSU or required to be under Defendants' supervision).

## CONCLUSION

This Court should reverse.

Respectfully submitted,

/s/ Conor D. Tucker

STEFFEN N. JOHNSON
  *Wilson Sonsini*
  *Goodrich & Rosati, P.C.*
  *1700 K Street, NW*
  *Washington, DC 20006*
  *(202) 973-8800*
  *sjohnson@wsgr.com*

CONOR D. TUCKER*
AVA K. MEHTA
  *Wilson Sonsini*
  *Goodrich & Rosati, P.C.*
  *633 West Fifth Street*
  *Los Angeles, CA 90071*
  *(424) 446-6900*
  *ctucker@wsgr.com*
  *amehta@wsgr.com*

***Appointed Counsel for Plaintiff-Appellant, Willie Balle*

FEBRUARY 10, 2023

## CERTIFICATE OF COMPLIANCE WITH
## FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)

The undersigned, counsel of record for the Plaintiff-Appellant, Willie Balle, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7) and Circuit Rule 32(c):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) and Circuit Rule 32(c) for a brief produced with a proportionally spaced font.  The length of this brief is 6,840 words.  In preparing this certificate, I relied on the word count generated by Microsoft Word 365.

Dated: FEB. 10, 2023                    /s/ *Conor D. Tucker*
                                        _____
                                        Conor Tucker
                                        *Counsel for Plaintiff-Appellant,*
                                        *Willie Balle*

## PROOF OF SERVICE

The undersigned, counsel for the Plaintiff-Appellant Willie Balle, hereby certifies that on February 10, 2023, the **Reply Brief of Plaintiff-Appellant** was filed through the Court's CM/ECF system, which will serve counsel of record for all parties.

Dated: Feb. 10, 2023

/s/ *Conor D. Tucker*

Conor Tucker
*Counsel for Plaintiff-Appellant,*
*Willie Balle*